UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANTHONY PERRONE,

*Plaintiff*,

-vs-

MONROE COUNTY SHERIFF PATRICK
O'FLYNN, MONROE COUNTY SHERIFF'S
DEPUTY THOMAS PERKINS AND MONROE
COUNTY SHERIFF'S DEPUTY JOSEPH
NEIDERT,

*Defendant*.

DECISION & ORDER

11-CV-6411 CJS-MWP

---

**APPEARANCES**

For Plaintiff:                          Leo G. Finucane, Esq.
                                        Finucane & Hartzell
                                        Six North Main Street
                                        Pittsford, NY 14534
                                        (585) 586-0220

For Defendant:                          Howard A. Stark, Esq.
                                        Monroe County Department of Law
                                        39 West Main Street Room 307
                                        Rochester, NY 14614
                                        (585) 753-1433

**INTRODUCTION**

**Siragusa, J.** Plaintiff Anthony Perrone ("Perrone") filed a complaint alleging violations under 42 U.S.C. § 1983, Amendments IV and XIV of the United States Constitution, and New York State common law. Compl., Oct. 2, 2014, ECF No. 33. Now before the Court is Perrone's cross motion, filed on September 30, 2015, ECF No. 46, to

amend, or correct, the complaint, and a motion by defendant Monroe County Sheriff Patrick O'Flynn ("the Sheriff") for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) filed on March 30, 2015, ECF No. 40. Oral argument on both motions took place on November 19, 2015. For the reasons detailed below, Perrone's application is denied, and the Sheriff's application is granted.

## FACTUAL BACKGROUND

The Court takes the following facts from the amended complaint, ECF No. 33, filed on October 2014, which the Court assumes to be true for the purposes of its motion analysis. Perrone was arrested by Monroe County Deputy Sheriff Thomas Perkins ("Perkins") on March 10, 2010. Perkins had received a dispatch call concerning an unknown vehicle parked in a residential driveway in the Town of Penfield, and arrived to find Perrone in the car, and arrested him for a violation of the New York State Vehicle and Traffic Law. Am. Compl. ¶¶ 13–15. Perkins was assisted by Monroe County Sheriff's Deputy Joseph Neidert ("Neidert"). *Id.* ¶ 16. Perkins and Neidert placed handcuffs on Perrone, who was compliant and cooperative with both deputies. *Id.* ¶ 17, 19. Perrone "repeatedly complained to Perkins and Neidert that the handcuffs were causing significant pain and discomfort, and expressly asked them to remove of loosen the handcuffs." *Id.* ¶ 21. However, "Perkins and Neidert dismissed Perrone's complaints of pain and his requests to remove or loosen the handcuffs or otherwise take measures to prevent permanent injury to Perrone." *Id.* ¶ 22. Perrone asserts that he sustained injuries as a result of the application of the handcuffs, and the injuries are permanent.[1]

---

[1] In his proposed Second Amended Complaint ¶ 23, Sept. 30, 2015, ECF No. 46-2, Perrone alleges that he is a physician and surgeon, and that Perkins and Neidert learned of that during their investigation.

Perrone alleges that the Sheriff has deprived him of his civil and constitutional rights through the execution of a governmental policy or practice. Paragraphs 35 through 41 of the complaint contain the majority of the allegations against the Sheriff. Paragraph 38 is the only paragraph that alleges the establishment of a practice or policy:

> 38. [The Sheriff], through the Monroe County Sheriff's Department, has established a practice, policy, or custom which directly and proximately caused the injuries and harm suffered by Perrone, as stated more fully throughout this Complaint, by deliberately failing to adequately supervise or train its [sic] officers in the safe and proper use of handcuffs on arrestees or detainees and/or the proper procedures to follow in the event an arrestee or detainee expresses complaints of pain or severe discomfort from the handcuffs being to [sic] tight; failing to adequately supervise or train its [sic] officers about proper inspection of handcuff equipment in service consistent with [the] manufacturer's recommendations; when safety alerts about defects in handcuff equipment are received from the manufacturers of said equipment, failing to promulgate adequate policies and procedures for notifying officers of such safety alerts; confirming that officers have in fact received such safety alerts and/or establishing procedures for follow-up in determining whether handcuffs in service (about which manufacturer's safety alerts have been received) have been inspected, repaired or removed from service; and/or otherwise providing for repair of such defective handcuff equipment before it is returned to service.

Compl. ¶ 38.

Perrone lists five causes of action in his amended complaint: (1) against defendants Perkins and Neidert pursuant to 42 U.S.C. § 1983 alleging excessive force and unreasonable seizure contrary to Perrone's rights under the Fourth and Fourteenth Amendments to the Constitution; (2) against the Sheriff pursuant to 42 U.S.C. § 1983 alleging a *Monell*[2] claim for his alleged failure to train and supervise his deputies on the safe and proper use of handcuffs, and the procedures to follow upon receipt of com-

---

[2] *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978).

plaints of pain or severe discomfort; (3) against defendants Perkins and Neidert pursu-

ant to State law alleging assault; (4) against defendants Perkins and Neidert pursuant to

State law alleging battery; and (5) against all Defendants pursuant to State law for neg-

ligence. The only causes of action before the Court on this motion are the second and

fifth.

## STANDARDS OF LAW

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings

is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."

*Cleveland v. Caplaw Enterprises,* 448 F.3d 518, 521 (2d Cir. 2006). The United States

Supreme Court, in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), clarified the stand-

ard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain
> statement of the claim showing that the pleader is entitled to relief, in order
> to give the defendant fair notice of what the claim is and the grounds upon
> which it rests. While a complaint attacked by a Rule 12(b)(6) motion to
> dismiss does not need detailed factual allegations, a Plaintiff's obligation
> to provide the grounds of his entitlement to relief requires more than labels
> and conclusions, and a formulaic recitation of the elements of a cause of
> action will not do. Factual allegations must be enough to raise a right to re-
> lief above the speculative level, on the assumption that all the allegations
> in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotations omitted); *see also, ATSI Communications,*

*Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plain-

tiff must provide the grounds upon which his claim rests through factual allegations suf-

ficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v.*

*Twombly* ) (footnote omitted); *Iqbal v. Hasty,* 490 F.3d 143 (2d Cir. 2007) (Indicating

that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a

pleader to amplify a claim with some factual allegations in those contexts where such

amplification is needed to render the claim plausible[,]" as opposed to merely conceivable), *rev'd on other grounds in Ashcroft v. Iqbal*, 556 U.S. 662, 670 (2009).

When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Burnette v. Carothers,* 192 F.3d 52, 56 (1999), *cert. denied,* 531 U.S. 1052 (2000). On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir. 1995) (*citing In re American Express Co. Shareholder Litig.,* 39 F.3d 395, 400 n.3 (2d Cir. 1994)). As the Supreme Court clarified in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009):

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.,* at 555, (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157–58. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). *Iqbal,* 556 U.S. at 678–79.

*Ashcroft*, 556 U.S. at 678.

***Motion to Amend***

Federal Rule of Civil Procedure 15 provides, in relevant part, as follows: "[a]mendments before trial . . .q (2)[i]n all cases, a party may amend its pleadings with ... the court's leave. The court should freely give leave when justice so requires." Fed R. Civ. P. 15(a)(2) (2007); *see Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 9 L.Ed.2d 222 (1962) (leave to amend "[should] be freely given when justice so requires...."). "In the absence of any apparent or declared reason ... such as undue delay, bad faith or dilatory motive on the part of the movant ... the leave sought should, as the rules require, be 'freely given.'" *Foman,* 371 U.S. at 182.

***Fed. R. Civ. P. 16(b)***

Rule 16(b) outlines case management scheduling orders issued by the court and states in relevant part that: [a] schedule may be modified only for good cause and with the consent of the court. Fed. R. Civ. P. 16(b)(4) (2007). The Second Circuit has held that Rule 16(b) "may limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleadings has passed." *Kassner v. Reiffe,* 496 F.3d 229, 243 (2d Cir. 2007). Consequently, a motion to amend the pleadings pursuant to Rule 15(a) is subject to the limits of a Rule 16(b) scheduling order. *Id.* at 244.

A Rule 15(a) motion to amend, that violates a Rule 16(b) scheduling deadline, requires a showing of "good cause" by the movant. *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340 (2d Cir. 2000). The Court can deny leave to amend the pleadings, "after the deadline set in the scheduling order where the moving party, [who bears the burden] ... has failed to establish good cause ... and is especially relevant to an amended pleading motion that is substantially out of time under that order." *Id.* The Court may

find good cause to allow an amendment to the pleading when the deadline established "cannot reasonably be met despite the diligence of the party seeking the extension." *Id.*[3]

## ANALYSIS

### *"Good Cause" and "Excusable Neglect"*

The Amended Scheduling Order in this case, entered on January 20, 2015, ECF No. 37, set a deadline of July 31, 2015, for fling dispositive motions. The Sheriff filed his motion for judgment on the pleadings on March 20, 2015, and the Court issued a scheduling order on March 31, 2015, setting a date of April 21, 2015, for Perrone's response to the motion. Perrone did not file any response to the Sheriff's motion until September 30, 3015, when he filed an affidavit in opposition, ECF No. 47, and a cross-motion to amend the amended complaint, ECF No. 46. Perrone's response to the Sheriff's motion did not address the requirement, pursuant to Fed. R. Civ. P. 6, to show "excusable neglect" for his failure to meet the April 21, 2015, deadline.

Perrone's application to amend the amended complaint comes well after the deadline set by the Court's scheduling order, entered on October 19, 2011, ECF No. 11. The deadline for amending pleadings was set at February 29, 2012. Perrone's motion to amend the amended complaint was filed on September 30, 2015, more than three years and seven months after the deadline. As a result, he must establish "good cause" for the delay.

---

[3] Perrone's counsel acknowledged in his affidavit that "T there are not sufficient facts to assert a claim of negligent hiring, training and supervision against the Sheriff and no such cause of action is included in the proposed second amended complaint." Finucane Aff. in Support of Cross-Motion to Amend Complaint ¶ 21, Sept. 30, 2015, ECF No. 46-1.

The Northern District addressed the two standards ("excusable neglect" and "good cause") in *Corkrey v. Internal Revenue Serv.*, 192 F.R.D. 66, 67 (N.D.N.Y. 2000), writing:

> A difference exists in the standards for "excusable neglect" and for "good cause." *See Broitman v. Kirkland,* 86 F.3d 172, 175 (10th Cir. 1996) ("'good cause' requires a greater showing than 'excusable neglect.'"). At a minimum, however, both standards require a showing by the moving party of an objectively sufficient reason for extending a deadline. For purposes of Rule 16(b), "'good cause' requires 'the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Robinson v. Town of Colonie,* No. 91–CV–1355, 1993 WL 191166, at *3 (N.D.N.Y. June 3, 1993) (McCurn, J.); *see also Julian v. Equifax Check Services, Inc.,* 178 F.R.D. at 16; *Pulsecard, Inc. v. Discover Card Services, Inc.,* 168 F.R.D. 295, 301 (D. Kan. 1996).

Perrone submits that his legal counsel was having substantial renovations done to his firm's building during the month of August, 2015, and, therefore, could not timely respond to the Sheriff's papers. His counsel's affidavit provides the following details:

> Extensive renovations to the office building in which my law firm (we are the only tenant) began on August 3, 2015 (return is scheduled for November 3), physically displacing the staff from the premises in July, creating unforeseen disruptions to productivity with the computer network and scanning equipment and impairing our ability to address work/court deadlines, such as motion and pleading practice in this and other cases, difficulties communicated to Mr. Stark on more than one occasion after July 29, 2015 because it was impacting my capacity to respond to the defendants' motion to dismiss and/or seek leave to amend in this case.

Finucane Reply Aff. ¶ 18, Oct. 30, 2015, ECF No. 53. Perrone contends that, "the 'good cause' standard of Rule 16(b) is met in light of the defendants' consent to amendment 30 days after the end of discovery, an objective thwarted, even with due diligence, by unanticipated delays caused by building renovations." *Id.* ¶ 23. Perrone has not demonstrated why he was unable to contact the Court to request an extension of the deadline set by the Court's Order and Stipulation docketed on November 20, 2012, ECF No. 19. The Court also notes that the Order and Stipulation of November 20 contained this lan-

guage, to which "the attorneys of record for all the parties that have appeared" in this action agreed: "That final judgment be entered dismissing this action against defendants County of Monroe and Monroe County Sheriff Patrick O'Flynn…." *Id.* at 1. No judgment, however, appears in the docket.

The Court is reluctant to accept Perrone's explanation of the delay in filing his cross-motion as "good cause." However, the Second Circuit has frequently stated, as it did in *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001) that,

> "[s]trong public policy favors resolving disputes on the merits" and that, "[a]lthough courts have an interest in expediting litigation, abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct." *Am. Alliance Ins. Co. v. Eagle Ins. Co.,* 92 F.3d 57, 61 (2d Cir.1996).

*Id.* at 172. It appears from reading Perrone's counsel's affidavit that he made efforts to keep communications open with opposing counsel and that he is not engaging in egregious or deliberate conduct to delay this case. Therefore, the Court will not deny his application on the basis of untimeliness.

### Cross-Motion to Amend

Before discussing the Sheriff's motion for judgment on the pleadings, it is necessary to address Perrone's cross-motion to amend, because if the Court were to grant that application, it would moot the Sheriff's motion. *Kriwox v. EBS-RMSCO, Inc.*, No. 7:10-CV-1070, 2011 WL 2133624, at *3 (N.D.N.Y. May 26, 2011) ("Because plaintiffs' cross-motion to amend will be granted, and a second amended complaint filed, Empire State's motion to dismiss and EBS's motion for judgment on the pleadings will be denied as moot."). In analyzing Perrone's cross-motion to amend, the Court must examine the plausibility and sufficiency of the claims against the Sheriff. Although leave to amend must be liberally granted, the Supreme Court in *Foman v. Davis*, 371 U.S. 178

(1962), cautioned that it was only in

> the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of amendment*, etc.—the leave sought should, as the rules require, be "freely given."

*Id.* at 182 (emphasis added).

The factual allegations contained in Perrone's proposed second amended complaint fail to support a plausible claim that the Sheriff acted with a disregard towards the safety of individuals being placed under arrest. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). Since Perrone's claim against the Sheriff arises under 42 U.S.C. § 1983, he must allege sufficient facts to raise a plausible claim that the arresting deputies acted under a policy or custom, or that the Sheriff's inadequate training "amount[ed] to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (footnote omitted).

> A plaintiff may satisfy the "policy or custom" requirement by alleging the existence of "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York,* 705 F.Supp.2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

*Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 301 (S.D.N.Y. 2015).

Perrone focuses on the Sheriff's policy of permitting his deputies to swap hand-cuffs with others from the Sheriff's Office, or even other police agencies, when turning over a handcuffed individual. His theory is that by allowing swapping of handcuffs, the Sheriff has lost accountability over the handcuffs used by his deputies, possibly permit-ting certain defective handcuffs manufactured by the Peerless Handcuff Company ("Peerless") to enter service and be used by his deputies. Further, Perrone argues that the handcuffs that Peerless recalled for a defect could have tightened on his wrists, even in the absence of excessive force applied by the arresting deputies. However, the conclusions Perrone draws from the Peerless "Important Safety Notice," attached to the proposed second amended complaint as Exhibit D, are speculative.[4] Moreover, the al-legations in the complaint, and attachments, show that the Sheriff instituted adequate safeguards in light of the Peerless recall notice.

First, the Peerless notice states that on some of their handcuffs (specifically de-scribed in the safety notice and identified by a series of serial numbers): "Springs have failed, which could cause the locking mechanism to malfunction." Pl.'s Proposed Sec-ond Amended Comp. Ex. D, Sept. 30, 2015, ECF No. 46-3. From the word "malfunc-tion," Perrone has concluded that Peerless is warning that the handcuffs could over-tighten themselves. However, Peerless' warning is equally interpretable as meaning that the locking mechanism malfunction could cause the handcuffs to become unlocked and pose a danger to the arresting officers.

---

[4] Perrone's argument also refers to the arresting deputy's denials, in his answer, of the use of excessive force in applying the handcuffs. He argues, logically, that if the jury were to determine the deputies did not use excessive force, then as an alternative theory, the handcuffs must have been defective. Although Perrone alleges that Perkins, the arresting deputy, used Peerless handcuffs to restrain Perrone, Proposed Second Amended Compl. ¶ 20.

Second, the Sheriff took adequate precautions to ensure his deputies did not use the recalled handcuffs. His publication, All Bureau Training News, Vol. 3, No. 8, August 2006, contained this notice:

Handcuffing Safety Update

The July 2006 issue of All Bureau Training News reported that Peerless handcuffs, (Model 700) with serial numbers 453501 through 485060, (in-clusive), had a reported defect. The Quartermasters Office does not have any of these #s in their stock. However, it is recommended that you check your cuffs to ensure that you do not possess any of those in question. Cuffs are frequently swapped out with other officers, and you may have inadvertently been given a defective set. If you do find that you have a pair of the defective cuffs, contact the Quartermaster for replacement.

Pl.'s Proposed Second Amended Compl. Ex. E. Consequently, the Court finds that granting Perrone's motion to file a second amended complaint to add factual allegations against the Sheriff in support of the Second and Fifth causes of action would be futile.

### The Sheriff's Motion for Judgment on the Pleadings—§ 1983 Claims

Within the amended complaint, ECF No. 36, which is the operative pleading, Per-rone does not allege sufficient facts to create a plausible claim against the Sheriff that would entitle Perrone to relief. Absent from the amended complaint is any form of evi-dence that sheds light upon the nature of the potential defect with the handcuffs. Blindly claiming that the handcuffs could be harmful to the detainee is speculative. Even the addition of facts in his proposed second amended complaint would be insufficient to plead a plausible cause of action on the theory that the Sheriff's policy of allowing swapping of handcuffs violated Perrone's civil rights.

With regard to Perrone's theory of liability that the Sheriff failed to train or super-vise his deputies, the Second Circuit held the following in *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992):

> We discern three requirements that must be met before a municipality's failure to train or supervise constitutes deliberate indifference to the constitutional rights of citizens. First, the plaintiff must show that a policymaker knows "to a moral certainty" that her employees will confront a situation. *Id.*… Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult, or that there is a history of employees mishandling the situation.… Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

*Walker*, 974 F.2d at 297 (*quoting Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)). As the Supreme Court made clear in its 1989 decision: "We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 412 (1989).

Drawing all reasonable inferences in favor of Perrone, the Court finds that he has alleged that during the course of their work, deputies working for the Sheriff will detain citizens and that proper training on the use of handcuffs would decrease the likelihood of injuries and constitutional violations. However, Perrone has failed to adequately plead: (1) that the Sheriff directly participated in placing handcuffs on him; or (2) after learning of the alleged violation through a report or appeal, that the Sheriff failed to remedy the wrong; or (3) that the Sheriff created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; or (4) that the Sheriff was grossly negligent in managing subordinates who caused the unlawful condition or event. Perrone's claims lack the factual allegations necessary to illustrate a relationship between handcuffs being too tight and a constitutional violation on the part of the Sheriff.

The Court agrees that Perrone's allegations against the deputies directly involved in his arrest are that they placed his handcuffs on too tightly, and did nothing to remedy the situation when Perrone complained, but Perrone has not alleged facts from which the Court could infer that the tightness of the handcuffs was the result of a practice, policy, or custom established by the Sheriff. *See Nielsen v. City of Rochester*, No. 11-CV-6196 EAW, 2014 U.S. Dist. LEXIS 141946 (W.D.N.Y. Sept. 29, 2014) ("Plaintiff's complaint does not make any specific allegations regarding Chief Sheppard's custom of failing to investigate leads, withholding material from prosecutors, or exposing subjects of arrest to excessive force. Plaintiff's allegations regarding Defendant Sheppard's personal involvement are conclusory, and he has merely recited the legal standard required for imposing supervisory liability, without providing any supporting factual allegations."). Perrone's failure to plausibly allege that the Sheriff established an official practice, policy, or custom, requires that his second cause of action be dismissed.

### The Sheriff's Motion for Judgment on the Pleadings—State Claims

Perrone claims in his fifth cause of action that:

> 64. Perkins and Neidert negligently and carelessly departed from good and acceptable procedures of the Monroe County Sheriff's Department[5] in the arrest and prosecution of Perrone, thereby causing serious injury and damages to Perrone.

> 65. [The Sheriff] . . . has established practices, policies, or customs . . . by deliberately failing to adequately supervise or train [his] officers in the proper methods of inspection of handcuffs prior to their use in service; the safe and proper use of handcuffs on arrestees or detainees; and/or the proper procedures to follow in the event an arrestee or detainee expresses complaints of pain or severe discomfort from the handcuffs being too tight; failing to adequately supervise or train [his] officers about proper inspection of handcuff equipment in service consistent with [the] manufacturer's recommendations; when safety alerts about defects in handcuff

---

[5] This allegation in paragraph 64 directly contradicts the allegations in paragraph 68 alleging that the Sheriff established a "practice, policy, or custom" that violated Perrone's constitutional rights.

equipment [were] received from the manufacturers of said equipment, fail-
ing to promulgate adequate policies and procedures for notifying officers
of such safety alerts; confirming that officers have in fact received such
safety alerts and/or establishing procedures for follow-up in determining
whether handcuffs in service (about which manufacturer's safety alerts
have been received) have been inspected, repaired or removed from ser-
vice; and/or otherwise providing for repair of such defective handcuff
equipment before it is returned to service.

66. [The Sheriff], through the Monroe County Sheriff's Department, negli-
gently and carelessly departed from good and acceptable hiring, training
and supervision of Perkins and Neidert and its agents associated with the
arrest and malicious prosecution of Perrone.

Compl. ¶¶ 64–66.

The reasonable inference from Perrone's claim is that the Sheriff is vicariously li-
able for the acts of his deputies on the theory of *respondeat superior*. However, as the
Fourth Department has written, "a Sheriff cannot be held personally liable for the acts or
omissions of his deputies while performing criminal justice functions, and that … princi-
ple precludes vicarious liability for the torts of a deputy." *Trisvan v County of Monroe*, 26
A.D.3d 875, 876 (N.Y. App. Div. 4th Dep't 2006), *lv. dis.* 6 N.Y.3d 891 (2006). The com-
plaint does not allege the Sheriff was personally involved in Perrone's arrest, and he is
not vicariously liable under State law for the actions of the two arresting deputies.

Perrone also specifically alleges that the Sheriff is liable for negligent hiring, neg-
ligent retention, and negligent supervision. "A necessary element of a cause of action to
recover damages for negligent hiring, retention, or supervision is that the employer
'knew or should have known of the employee's propensity for the conduct which caused
the injury." *Shu Yuan Huang v. St. John's Evangelical Lutheran Church*, 129 A.D.3d
1053, 1054 (N.Y. App. Div. 2d Dep't 2015) (quoting *Kenneth R. v. Roman Catholic Dio-
cese of Brooklyn,* 229 A.D.2d 159, 161 (N.Y. App. Div. 2d Dep't 1997) (other citation
omitted)). Perrone has failed to allege that Perkins and Neidert had a propensity for the

conduct which caused his injury, and that the Sheriff knew of it, or should have known of it. Consequently, the state claims against the Sheriff are also dismissed.

**CONCLUSION**

For the reasons stated above, Monroe County Sheriff Patrick O'Flynn's motion for judgment, ECF No. 40, is granted. The Clerk is directed to enter judgment for the Sheriff, dismissing the second cause of action in its entirety, and all claims against him under the fifth cause of action. The case may go forward on the remaining claims against Deputy Sheriffs Perkins and Neidert.

IT IS SO ORDERED.

Dated:   December  2, 2015
         Rochester, New York

                    ENTER:

                              /s/ Charles J. Siragusa
                              CHARLES J.  SIRAGUSA
                              United States District Judge